CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 25 2019

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LAMONT A. WOODS, | ) | CASE NO. 7:18CV00385 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Petitioner Lamont A. Woods, through counsel, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under a 2015 Virginia court judgment convicting him of second-degree murder. The matter is presently before the court on the respondent's motion to dismiss and Woods' response thereto. For the reasons set forth below, the court concludes that the respondent's motion to dismiss must be granted.

I. BACKGROUND

The Court of Appeals of Virginia found the following facts from the evidence presented at Woods' jury trial:[1]

> Toward the end of April 2012, [Woods]' relationship with his girlfriend, Takea Turner (Turner), seriously deteriorated. [Woods] testified that he assumed that Turner and Lamar Ward (the victim) were romantically involved. Turner and [Woods] had been living together in Henry County until a few days before the killing. On April 27, 2012, Turner and her infant son (Baby Woods) stayed with her friend, Manesha Ward ([Manesha]), at the home of [Manesha] and her boyfriend, Dacha Fitzgerald (Fitzgerald). The victim, who is [Manesha]'s brother, also stayed at [Manesha]'s house that night. [Woods] testified that on that same night, the victim and Turner repeatedly called and threatened [Woods] while he was "hanging out" with several people, including Kelly Trull (Trull), who corroborated this account. [Woods] also testified that Fitzgerald and the victim came to [Woods]'s house to threaten him the night before the shooting occurred — and that [Woods] then ran away from them into the woods.

---

[1] The court of appeals stated the facts in the light most favorable to Woods in addressing his claim of trial court error during jury instructions.

Details Surrounding the Murder

On the morning of April 28, 2012 (the day of the murder), Turner texted [Woods] some messages that he characterized as threatening. [Manesha], Fitzgerald, the victim, Turner, and Baby Woods then drove to and arrived at [Woods]' trailer in [Manesha]'s vehicle. [Manesha] drove, Turner sat in the front passenger seat, the victim sat in the left rear passenger seat, Fitzgerald sat in the right rear passenger seat, and Baby Woods was seated on Turner's lap. [Woods] testified that he was then wearing his gun holstered because he thought he would be leaving before Turner arrived. Turner exited the car and began arguing with [Woods]. The victim then began speaking from the backseat, saying things like "Fuck him" and "If he got a problem, then he can do something." [Woods] testified that it was at this point that he realized the victim was actually in the car — and that they began arguing.

[Woods] then provided his account of what happened next, stating, "So as we are arguing, I am walking towards the car. So when I walked towards the car, yea, I was telling him to get out the car. . . . If he had a problem with me, then I was willing to fight it out and get it over with." [Woods] said that his intention was only to engage in a fistfight. "So as I'm getting closer to the car, that's when he pulls his gun out." [Woods] said of the victim, "He basically just flashed [his gun] out of the window. He was still in the car at the time." [Woods] testified that after the victim flashed the gun with his right hand, "So that's when I kind of slid behind the tree and I kind of asked him to leave. . . ." [Woods] further testified that he heard car doors opening and shutting, and he heard the victim say something threatening and tell [Woods] to come out from behind the tree. "So as I come behind the tree: at this time, I had pulled my gun out of my holster, so as I come behind the tree, he had his gun kind of like, it was up by his side. He was standing outside of the car, but he was still in the doorway, kind'a." Counsel asked [Woods], "So he was in between the door and where it was open?" [Woods] responded, "Right. So as I come behind the tree, . . . he raises his gun, and that's when I just started shooting, running towards the woods."

When asked whether he shot at the victim ten times, [Woods] responded, "Maybe. I'm not sure. I feared for my life, so I just wasn't counting. I wasn't really aiming. I just directed the gun in his direction and I won't [sic] really trying to purposefully kill him or nothing like that. I was just trying to get out of there." [Woods] admitted that no one else fired a shot, and did not dispute that every shot he fired hit the victim. [Woods] testified that he was afraid of the victim "because of his reputation and the threats that he made over the phone." He knew that the victim took a gun with him everywhere he went. [Woods] did not dispute that he shot through the car's back windshield. Fitzgerald testified that he saw [Woods] shooting the victim through the rear window of the car. Fitzgerald also testified that he exited the car and ran to the woods when [Woods] began shooting the victim.

> Soon after the shooting, [Manesha] called 9-1-1, informing them that her brother had been shot and was not breathing. The phone call then suddenly terminated on the caller's end. Alfred Lemons, an eyewitness to the subsequent car accident, testified that he observed a car (later determined to be [Manesha]'s vehicle) drive by him, skid off the road, and hit a tree. [Manesha], Turner, Baby Woods, and the victim's body were thrown from the vehicle, killing all of the living passengers.
>
> Uncontroverted Physical Evidence
>
> Assistant Chief Medical Examiner Gayle Suzuki testified that the victim's cause of death was multiple gunshot wounds. The victim received ten gunshot wounds — three of which were lethal. All three lethal gunshot wounds were consistent with being shot in the back. In fact, [Woods] himself acknowledged that over half of the shots fired were fired from behind the victim. Dr. Suzuki testified that the superficial injuries the victim received in the car crash were sustained post-mortem.
>
> Wendy Gibson — a forensic scientist with the Department of Forensic Science and an expert in identification of firearms and tool marks — testified, "During the course of this analysis, I was able to identify that all ten of these cartridge cases [found at the scene] had been fired in one firearm." All ten cartridge cases were the same brand and caliber. Further, each of the five bullets recovered from the victim's body was consistent in design with the brand and caliber of the ten cartridge cases and was fired from one firearm.

Woods v. Commonwealth, 782 S.E.2d 613, 615-16 (Va. Ct. App. 2016).[2]

On May 21, 2012, a grand jury in the Circuit Court of Henry County returned indictments charging Lamont Anthony Woods with first-degree murder, grand larceny of a firearm, use of a firearm in the commission of a felony, maliciously shooting into an occupied vehicle, and endangering the life of a child. Woods pleaded not guilty to the first four charges and proceeded to a jury trial. The court granted Woods' request for a jury instruction for the lesser included offense of second-degree murder and for self-defense. The court found that the evidence did not support an instruction for the lesser included offense of voluntary manslaughter, however.

---

[2] "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008).

3

The jury found Woods guilty of second-degree murder, use of a firearm in the commission of a felony, and maliciously shooting into an occupied vehicle, but acquitted him of grand larceny. The jury set Woods' punishment at twelve years in prison for the murder conviction, three years and five years on other convictions, for a total of twenty years. By order dated January 14, 2015, the circuit court imposed the sentences fixed by the jury. The circuit court also sentenced Woods that day for the child endangerment charge, to which Woods had pleaded no contest.

Woods appealed his second-degree murder conviction,[3] arguing that the trial court erred in denying a jury instruction for voluntary manslaughter. In a published opinion, the Court of Appeals of Virginia affirmed Woods' conviction. Woods v. Commonwealth, 782 S.E.2d 613, 615 (Va. Ct. App. 2016). The Supreme Court of Virginia refused his subsequent petition for appeal in that court in a summary order.

Woods then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. The Court construed the petition as raising these two claims: (1) trial counsel provided ineffective assistance by failing to investigate and obtain witnesses and cell phone evidence to bolster Woods' trial testimony that he shot the victim out of fear for his life rather than out of malice, and (2) the Commonwealth withheld exculpatory evidence likely contained on one or more cell phones likely recovered from the scene of the fatal car crash that occurred after the shooting. The Supreme Court of Virginia denied relief on both claims. Mem. Supp. Mot. Dism. Ex. 16, ECF No. 7-16.

Woods' federal habeas corpus petition itself raises these overlapping claims for relief, as paraphrased by the court:

(A) Woods' guilty plea was not voluntary and intelligent, because his trial counsel provided incompetent advice and conducted an inadequate pretrial investigation to support Woods' testimony;

---

[3] Woods did not appeal his other convictions.

(B)  Trial counsel provided ineffective assistance by failing to prepare and "properly establish Woods' state of mind at the time of the shooting as being in fear of his own life";

(C)  Trial counsel provided ineffective assistance by failing "to properly impeach the Commonwealth's main witness, Dacha Fitzgerald; and

(D)  The Commonwealth withheld exculpatory evidence by not disclosing the information about the victim's cell phone text messages in violation of Brady v. Maryland, 373 U.S. 83 (1963).

Pet. 6-7, ECF No. 1. Woods' memorandum in support of his petition, ECF No. 1-1, however, discusses only the two habeas claims addressed by the Supreme Court of Virginia in state habeas proceedings. As relief, Woods asks the court to "overturn his convictions." Mem. Supp. Pet. 23, ECF No. 1-1. The respondent has filed a motion to dismiss, and Woods has responded, making the matter ripe for disposition.

II. DISCUSSION

A. Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). The exhaustion requirement in § 2254(b)

> requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim.

Anderson v. Harless, 459 U.S. 4, 6 (1982).[4]

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

5

Even where the petitioner has completed his direct appeals and habeas remedies in the state courts, federal review of his §2254 claims may be procedurally barred. If a state court expressly bases its dismissal of a claim on the petitioner's default of a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal habeas version of that claim is also procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). Similarly, if the petitioner has not presented a claim or part of a claim to the state courts, but would clearly be barred by an independent and adequate state procedural rule from having that claim adjudicated now if he returned to state court, the claim is procedurally barred from federal habeas review. Bassette v. Thompson, 915 F.2d 932, 936 (4th Cir. 1990) (citing Teague v. Lane, 489 U.S. 288 (1989)). A federal habeas court may review the merits of a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012).

The respondent argues that Woods' Claim (A), challenging the validity of his guilty plea to the charge of endangering a child, and Claim (C), alleging counsel's failure to properly impeach a witness, are unexhausted and procedurally barred from federal habeas review.[5] Records from the Supreme Court of Virginia reflect that Woods' state habeas petition did not include any claim that his guilty plea to the child endangerment charge was invalid. That petition also did not complain about trial counsel's advice regarding the plea or about counsel's alleged failure to effectively impeach Fitzgerald. Thus, the court concludes that Woods failed to give the state

---

[5] The respondent concedes that Claim (B) is both exhausted and not procedurally defaulted, because Woods presented it to the Supreme Court of Virginia on direct appeal.

6

habeas court an opportunity to address the substance of these claims before filing his federal petition. Therefore, he did not exhaust his state court remedies as to Claims (A) and (C) as required under § 2254(b).

Woods would now be precluded from presenting these claims in state court. Va. Code Ann. §§ 8.01-654(A)(2), -654(B)(2). These Virginia Code sections, setting the statute of limitations for bringing a state habeas claim, and requiring a habeas petitioner to bring in his first petition all allegations known to him at that time, are both adequate and independent state procedural rules. Bassette, 915 F.2d at 937 (regarding § 8.01-654(B)(2)); Sparrow v. Dir., Dep't of Corrs., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (regarding § 8.01-654(A)(2)). Accordingly, the court concludes that Claims (A) and (C) are procedurally barred from federal review absent a showing of cause and prejudice, or a miscarriage of justice.[6] Bassette, 915 F.2d at 936. Woods does not attempt to show cause for his default of these claims.

The respondent also contends that although Woods presented Claim (D) to the state courts, it is procedurally defaulted. In the state habeas proceedings, the Supreme Court of Virginia summarized this claim as follows:

> [Woods] speculates the police must have recovered one or more cell phones used by Turner, Ward, and Ward's sister, Manesha, and he further speculates one of these phones might have been the one Ward and Turner used to send him threatening text messages. [Woods] bases this speculation on evidence that, after [he] shot Ward, Manesha sped away from the scene in her car with Turner, Turner's baby, and Ward's body. Moments later, Manesha, Turner, and the baby were all killed in a crash. The police investigated the scene of the fatal crash. [Woods] alleges the records of the text messages from Ward's phone would have been exculpatory because they would have shown [Woods'] state of mind when he shot Ward.

---

[6] Woods asserts in his pleadings that he has "exhausted" his state court remedies. He offers no evidence, however, to contradict the Supreme Court of Virginia records that reflect otherwise. The court also notes that in Woods' § 2254 petition, he merely lists Claims (A) and (C) in the form petition, without presenting any factual support for them. Accordingly, he has not demonstrated any entitlement to relief on these grounds, even absent his procedural default.

7

Mem. Supp. Mot. Dism. Ex. 16, at 2, ECF No. 7-16. The Court found that the claim was procedurally defaulted under the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), stating that "because this non-jurisdictional issue could have been raised at trial and on direct appeal . . . , [it] is not cognizable in a petition for a writ of habeas corpus." Id. Slayton is an independent and adequate state procedural rule. Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000). Accordingly, the court concludes that Claim (D) is procedurally barred from federal review absent a showing of cause and prejudice, or a miscarriage of justice.

To establish "cause," the petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule. A factor is external . . . if it cannot fairly be attributed to the prisoner." Davila v. Davis, __ U.S. __, 137 S. Ct. 2058, 2065 (2017).

Woods contends that ineffective assistance of counsel during pretrial preparation regarding the cell phone evidence, as alleged in his Claim (B), caused the default of the Brady claim in Claim (D). "[A]ttorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." Id. As herein discussed in addressing Woods' Claim (B) on its merits, Woods has not established that counsel's representation rose to the level of a constitutional violation. Therefore, the court also concludes that Woods has failed to show cause for default of Claim (D).[7]

---

[7] In addition, Claim (D) is meritless. To succeed on a Brady claim, the defendants must establish that "the evidence was (1) favorable to the accused, (2) suppressed by the government, and (3) material to the verdict at trial." Nicolas v. Attorney General of Maryland, 820 F.3d 124, 129 (4th Cir. 2016). Woods' bald assertion that the Commonwealth likely obtained the text messages from Ward's cell phone cannot establish a Brady violation. United States v. Young, 916 F.3d 368, 383 (4th Cir. 2019) (holding that defendant had "offered nothing but rank speculation as to the nature of the allegedly suppressed materials, which cannot establish a Brady violation"); United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001) (noting that to prove a Brady violation, the defendant must show that "the prosecution had the [purportedly withheld materials] and failed to disclose them").

Woods' conclusory allegations about the suppression of cell phone evidence are also insufficient to warrant an evidentiary hearing in this court. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (recognizing that "to obtain an evidentiary hearing . . . on any claim[,] a habeas petitioner must come forward with some evidence that the

Woods also asserts that his procedural defaults should be excused under the miscarriage of justice exception, based on counsel's allegedly inadequate investigation of the cell phone evidence as alleged in Claim (B). See Pet. Opp'n 3, ECF No. 11. The miscarriage of justice exception to default requires a colorable showing that, based on new evidence not presented at trial, "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 327 (1995) (holding that actual innocence contention to open a "gateway" through procedural default requires showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence").

Woods apparently contends that in light of the cell phone evidence not introduced at trial, no reasonable juror would have convicted him of second-degree murder, and would have opted instead to convict him of voluntary manslaughter or to acquit him on self-defense grounds. This argument is foreclosed by the court's conclusion that Woods has not established ineffective assistance as alleged in Claim (B). To prove that counsel's representation was so defective as to require reversal of a conviction, the petitioner must meet a two-pronged standard, showing that counsel's unreasonably deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet the Strickland prejudice requirement, the petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the outcome at trial would have been different. Id. at 694. The court herein determines that Woods fails to show prejudice under the reasonable probability standard of Strickland. Because the

---

claim might have merit. Unsupported, conclusory allegations do not entitle a petitioner to an evidentiary hearing"), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Moreover, the record does not reflect that Woods moved in the state court habeas proceeding for factual development of this claim. Juniper v. Zook, 876 F.3d 551, 564 (4th Cir. 2017) (holding that to warrant evidentiary hearing on § 2254 claim, "[a]t a minimum, a diligent petitioner must seek an evidentiary hearing in state court in the manner prescribed by state law").

9

"requisite probability" for the actual innocence gateway requires "a stronger showing than that needed to establish prejudice" under Strickland, Woods has not opened that gateway. Schlup, 513 U.S. at 327.

For the stated reasons, the court concludes that Woods has procedurally defaulted Claims (A), (C), and (D) and fails to show cause and prejudice for those defaults or actual innocence. Therefore, the court will grant the motion to dismiss as to these claims.

### B. The Federal Habeas Review Standard

Under 28 U.S.C. § 2254(d), the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011).

Because the Court of Appeals of Virginia adjudicated Woods' Claim (B) on the merits in habeas proceedings, this court must apply the deferential standard of review mandated by § 2254(d). The court of appeals' decision affirming Woods' conviction is the last reasoned state court opinion; thus, this court "looks through" the Supreme Court of Virginia's refusal order and reviews the reasoning of the court of appeals. Wilson v. Sellers, 138 S. Ct. 1188, 1193 (2018);

10

Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

### C. Ineffective Assistance of Counsel.

In addressing Woods' Claim (B), the court must apply the two-part Strickland standard: deficient performance and resulting prejudice. 466 U.S. at 687. First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances and facts known to counsel at that time. Id. at 687-88. This showing requires evidence that counsel's errors were so serious that he was not fulfilling his role in the adversarial process envisioned by the Sixth Amendment's fair trial guarantee. Id. The petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

Second, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "It is not enough to show that errors had some conceivable effect on the outcome of the proceeding." Harrington, 562 U.S. at 104. If the petitioner fails to satisfy either prong, his claim fails without need for further inquiry. Id. at 697.

> The Court of Appeals of Virginia summarized and analyzed Woods' Claim (B) as follows:
>
> [Woods] contends he was denied the effective assistance of counsel because counsel failed to conduct a reasonable investigation. [Woods] alleges counsel failed to interview witnesses or to obtain evidence relating to phone calls and text messages exchanged between [Woods], the victim, Lamar Ward, and [Woods]'s estranged girlfriend, Takea Turner, shortly before the offenses. [Woods] contends that had counsel obtained Ward's cell phone records, they would have supported

> [Woods'] testimony that he received threatening calls and texts from Ward and Turner shortly before the shooting and that he was in fear for his life when he shot and killed [Ward], thus negating the Commonwealth's evidence of malice. [Woods] alleges Turner and Ward sent him multiple text messages that "included imminent threats to my life and person" the day before and the day of the shooting.
>
> The Court holds [this claim] satisfies neither the "performance" nor the "prejudice" prong [under Strickland]. [Woods] fails to identify the witnesses counsel should have interviewed or to articulate what useful information any interviews would have yielded. Similarly, [Woods] fails to proffer the text messages he contends counsel should have obtained, nor has he described the content of the messages, save to say that they included threats. Further, the record, including the trial transcript and the affidavit of counsel, demonstrates [Woods] admitted at trial that he did not save the text messages, despite claiming they caused him to fear Ward. In addition, [Woods'] counsel avers that he discussed the text messages with [Woods], and [Woods] "was concerned that some of the texts could come off as aggressive on his part and counter to our self-defense defense." Due to that concern and that several witnesses confirmed [Woods] and Ward had been texting "in a heated fashion," [Woods] and counsel agreed to avoid procuring the specific messages. [Woods] has not contradicted counsel's explanation for why he did not pursue the text messages. Accordingly, [Woods] has failed to adequately substantiate his allegation that the text messages would have aided his defense or to show that counsel acted unreasonably in deciding not to procure the messages. Thus, [Woods] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Mem. Supp. Mot. Dism. Ex. 16, at 1-2, ECF No. 7-16.

The court agrees that Woods has failed to demonstrate an objectively unreasonable performance by counsel. At the most, Woods claims that Ward, via text messages, made imminent threats to Woods' life. Without a particularized description of the evidence counsel failed to obtain, the court cannot assess either counsel's alleged deficiency in failing to obtain it or the likelihood that prejudice resulted from that omission. Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (holding that failure to proffer what favorable evidence or testimony counsel should have produced is fatal to allegation of inadequate investigation).

In addition, court records reflect that Woods' counsel filed a discovery motion that included a demand for all Brady material, which would have encompassed any exculpatory cell

phone content, had the Commonwealth procured any.[8] Woods complains that the prosecution made effective use of the defense's lack of direct cell phone evidence, including the content of the text messages, to undercut Woods' credibility when he introduced no cell phone evidence of his own. Woods, not his counsel, deleted the text messages from Woods' own cell phone, however. Because other witnesses' testimony bolstered Woods' account of receiving heated text messages from Ward, cell phone calling records alone would have been merely cumulative evidence. The court concludes that Woods simply has not stated evidence sufficient to overcome the presumption that his counsel's strategic decisions with regard to the cell phone evidence fell within the scope of reasonable professional performance. Yarborough, 540 U.S. at 8 ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); Shaikh v. Johnson, No. 1:08CV1286, 2010 WL 2039016, at *9 (E.D. Va. May 20, 2010) (finding that petitioner failed to overcome presumption that counsel made "sound tactical decision" where unpresented evidence "represented a two-edged sword that counsel often confront when constructing the strategy most likely to assist rather than harm a client").

The court also agrees that Woods has not established prejudice under Strickland, resulting from counsel's failure to procure the cell phone data or text message content. Woods contends that with the cell phone evidence, he might have persuaded the judge to give a voluntary manslaughter instruction or the jury might have acquitted him of the murder charge upon finding that he acted in self-defense. To meet his burden on prejudice, Woods must show that the exculpatory value of the cell phone evidence, evaluated relative to inculpatory value of prosecution's evidence, was "reasonably likely" to place the whole case in such a different light

---

[8] Woods provides this court with evidence that many cell phone service providers do not retain the content of text messages, and those that do retain content, do so for no more than a month. Woods has not demonstrated that counsel was appointed and apprised of the importance of the text message content in time to have subpoenaed text message content from service providers, as Woods alleges that he should have done.

as to undermine confidence in the verdict. Strickland, 466 U.S. at 696. Woods has not carried this burden.

Second-degree murder, of which the jury found Woods guilty, is "a malicious killing." Woods, 782 S.E.2d at 617. To be malicious, the criminal "act must be done wilfully or purposefully." Id. Malice is "evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." Id.

> Voluntary manslaughter is the unlawful killing of another, committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation. . . . It excludes malice when provocation reasonably produces fear or anger that causes one to act on impulse without conscious reflection.

Id. By contrast, when making a plea of self-defense,

> a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors. The bare fear of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. There must also be some overt act indicative of imminent danger at the time.

Commonwealth v. Cary, 623 S.E.2d 906, 912 (Va. 2006).

In Woods' case, the evidence of malice was overwhelming. By his own testimony, after receiving the text messages, knowing that Ward always carried his gun with him, Woods took a loaded gun, approached Ward's car, and demanded that Ward get out and fight him. Moreover, the physical evidence showed that Woods fired ten rounds at Ward from beside and behind the car; each round struck the victim. Ward was shot five times in the back and once in the back of the arm. On this evidence, the court of appeals found that Woods "exerted great care in aiming at [Ward] and shooting him, which contradicts [Woods] theory that his reason was overcome by fear." Woods, 782 S. E. 2d at 618. Even if the text messages included direct threats that Ward

14

intended to shoot Woods dead on sight, the bare fear generated by those words did not justify Woods' infliction of ten rounds of deadly force in self-defense, more than half of them fired from behind the victim. The text messages also could not have refuted the reasonable conclusion that Woods provoked the confrontation with Ward and then "willfully and purposefully shot the victim with a deliberate mind" in a malicious "barrage of gunfire." Id. at 618-19.

For the stated reasons, the court cannot find that Woods has met his burden under Strickland to show either deficient performance or prejudice. Accordingly, the court concludes, pursuant to § 2254(d), that the state court's adjudication of Woods' Claim (B) was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of the facts in light of the evidence presented. The court will grant the motion to dismiss as to Claim (B).

### III. CONCLUSION

After careful review of the petition, the motion to dismiss, and pertinent parts of the state court records and decisions, the court concludes that the respondent's motion to dismiss must be granted.[9] An appropriate order will issue this day.

**ENTER:** This 25th day of September, 2019.

_____
Senior United States District Judge

---

[9] Because the court has found that Woods' claims must be dismissed as procedurally defaulted or without merit under § 2254(d), the court does not find it necessary to address the respondent's alternate time-bar defense as to some of the claims.

15